## Kelly v. Sale.

(Decided November 19, 1914.)

Appeal from Estill Circuit Court.

1. Land—Commissioner's Sale—Possession.—Where the successful bidder at a decretal sale, without executing bond, files exceptions to the commissioner's report objecting to a confirmance upon the ground that he could not get possession of the land and that he was stopped from surveying same by the defendant, but does not show facts entitling him to possession, in advance of executing bond, nor that there was any question about the title or boundary of the land, the court properly overruled the exceptions and confirmed the sale.

2. Land—Sale of Under Judgment—When Bid Becomes Contract.— Where a party bid for property at a decretal sale and his bid was accepted by the commissioner, his bid amounted to an cffer to contract and confirmance by the court amounted to an acceptance, with the result that the transaction became a contract between the bidder and party for whom the land was sold, and on a showing of such facts this court cannot relieve him of the effect of his contract.

3. Damages—Measure of Damages.—In an action to recover of a bidder at a decretal sale the difference between his bid and the amount realized on resale, because of his failure to execute bond, is the measure of damage.

J. B. WHITE for appellant.

RIDDELL & FRIEND for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

At a decretal sale appellant bid $1,500 for a tract of land. Failing to execute bond, the land was resold and brought a less price. This is a proceeding by rule to require appellant to pay the damage, that is, the difference between his bid and the amount the land brought on resale. The appellant, Kelly, and appellee, Sale, were

joint owners of the tract, which contained twenty-two acres, and judgment had been rendered for a sale, and division of the proceeds. This land adjoined other land owned by Sale. Sale says that its real value was not more than $400, while Kelly says it was worth $1,000. Both say that it was worth more to Sale than its real value. This, no doubt, is because it adjoins Sale's land. It does not appear that Kelly owned any land near it, but he testifes that it was of more value to him than anybody else except Sale. The conduct of both parties, as disclosed by the record, justifies the conclusion that neither party was quite so anxious to get title to the land as he was to make the other party pay an excessive price for it. There were three sales and both were bidders at each. The first sale was in January, 1912, and appellant, Kelly, was the successful bidder at the price of $1,500. He failed to execute bond. These facts were reported by the master commissioner at the April term of court. No steps were taken to confirm the commissioner's report until the December term, for, as the commissioner swears, Kelly asked for time in which to make the bond, and time was given until the report was filed, that is, from April until December. Sale says that he was anxious for plaintiff to execute the bond, and directed the commissioner to give him time. When the report was filed in December, Kelly filed an exception, which is as follows:

"Upon sale of said land and bid therefor by plaintiff (Kelly) he at once and within a few days after his purchase found out that he could not get possession of said land; and was prevented by the defendant (Sale) from getting possession thereof under his bid and purchase. Plaintiff and surveyor were stopped from going on the land or running it out so as to ascertain the boundary, or allow plaintiff to have possession."

Kelly does not show any facts entitling him to possession in advance of executing the bond, nor does he show there was any question about the title to the land, or the corners or boundaries of it, and the court properly overruled the exceptions and confirmed the sale. Re-sale was immediately ordered, and without any objection from Kelly. At the next sale, appellee, Sale, was the best bidder and the price was $300. These facts were reported by the commissioner at the March term, 1913. As this sale was set aside on motion of Kelly, there are, of course, no objections on his part to an-

other order of sale. It was on this other sale that the property brought $713 on the bid of appellee. Kelly was present, but was careful to have the bidding done in his behalf by a stranger, "who was instructed to bid up to $1,000." His last bid was $712.50, and he says that his representative "from some cause stopped bidding."

At the August term, 1913, Sale moved the court for a rule against Kelly to show cause why judgment should not be rendered against him for one-half of the difference between Kelly's bid of $1,500 on the first sale and appellee's bid of $713 on the last sale. The reason for a demand of only one-half the difference was that Kelly was half owner of the property. After demurrer, Kelly responded and set up two reasons why judgment should not be rendered against him. (1) That he announced at the sale that he was bidding on behalf of his wife, but that she refused to execute the bond; (2) It was necessary to have a survey of the lines and boundaries, "there having been much controversy and dispute as to their exact location, and, when Kelly went upon the land with a surveyor, that defendant, Sale, stopped said survey and notified the surveyor not to make any survey of same, whereupon the surveyor and plaintiff abandoned the attempt." For these reasons and for fear of litigation, as he says, Kelly and his wife failed to execute the bond. The facts set up in the response were denied by reply and the court heard proof on the issues joined. The commissioner and another witness testify that Kelly made no announcement at the sale or elsewhere about representing his wife or bidding the property in for her. Kelly himself does not testify he made known at the sale that he was acting for his wife. He merely says, that when he bid $1,500 he intended to execute the bond, "but upon seeing my wife, for whom I made the bid, she refused to mortgage our land for our security on the bid, which was demanded." As to the last ground, we are not impressed that there was any real dispute as to the location of boundaries or corners. Certainly Kelly was not in doubt as to them, for he continued to bid and admits that this land belonged to his father and he was present not long before when it was divided between the heirs and helped to run the lines.

If Kelly had been in good faith in his desire for a survey, there was ample time between April, when he made the bid, and December, when the sale was confirmed, to invoke the aid of the court and secure such re-

lief as the equities might entitle. him. The facts warrant the belief that the commissioner accepted the bid of Kelly, rather than of Kelly as agent for his wife, and that the court confirmed the sale so made. It is further apparent that Kelly's failure to execute the bond was not due to fear of title, or litigation growing out of it, but to the fact that he had bid more for the land than it was worth, with the expectation of having Sale bid still more and take it. His bid was equivalent to an offer to contract, and confirmance of it by the court amounted to an acceptance, with the result that the transaction became a contract between Kelly to purchase and those for whom the sale was made to sell. Certain it is, that Kelly by his rashness has suffered a very serious loss. His half of the purchase price is $37 less than half of the difference between his bid and the actual selling price. In other words, for his half interest in the land he gets nothing, plus a judgment for $37 against him. But where one is competent to make a contract, and is not the victim of fraud or mistake practiced upon him by the other party, this court cannot relieve him of the effect of his contract. The mere fact that he has made a hard bargain, or that he will lose money by it is no reason why he should not abide by it. Neither will it do to say that appellee was not injured by reason of the re-sale. It is true, Kelly says that the land was worth $1,000, and, if so, when Sale purchased it at the last sale for $713 he got it for about $300 less than it was worth, but that is not the measure of damage in this case. Appellant Kelly bid $1,500 for it and his bid was accepted. The damage which the land owner sustained is the difference between the amount of his bid and the amount realized on a re-sale. Brassfield, &c. v. Burgess, &c., 10 Ky. L. R., 660:

"Undoubtedly, if one purchase property under a decree, he is so far subject to the order of the court in the suit that, in the absence of a sufficient reason, his estate would be made liable for the price of whatever he has thus obtained, or in case he refuse to take the property for the difference between his bid and what it might bring upon a re-sale."

In Shirley v. Shewmaker's, etc., 23 Ky. L. R., 452, the appellant was purchaser of a tract of. land at judicial sale, but failed to execute bond; the sale was reported by the commissioner and confirmed by the court and a resale ordered, when appellant again became the purchaser

but at a price $62.50 less than the original purchase, and the court held that she was liable for the difference in price of the two sales. In Makemson's, etc. v. Braun, 100 Ky., 88, the court said:

"It is a well-settled law that a bidder who fails to comply with an accepted bid may, by proper proceedings, be required to pay the damage resulting from such failure which would include the difference between his bid, if any, and that realized on the final sale, if the property sold for less at the final sale." Cowper v. Weaver, 119 Ky., 401.

The judgment of the lower court is, therefore, affirmed.